IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rigberto Ortiz Sanchez, | ) |
| Petitioner, | ) CIV 12-00134 PHX ROS(MEA) |
| v. | ) REPORT AND RECOMMENDATION |
| Charles Ryan, Arizona Attorney General, | ) |
| Respondents. | ) |

TO THE HONORABLE ROSLYN O. SILVER:

Petitioner, proceeding pro se, filed a petition for writ of habeas corpus on January 20, 2012.  Respondents filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 10) on May 18, 2012.  Petitioner was granted three extensions of the time allowed to file a reply to the answer, which reply was due October 5, 2012.  As of October 24, 2012, no reply has been docketed.

**I Procedural History**

On April 11, 2006, 14-year-old "V.O.", Petitioner's daughter, was taken to a Phoenix hospital because she was not feeling well.  See Answer, Exh. N.  After undergoing a series of routine tests, the hospital determined that V.O. was two months pregnant.  See id., Exh. N.  V.O. told the hospital staff that

her father, Petitioner, was the father of her unborn child. _Id._, Exh. N.   She advised the hospital staff that Petitioner first had sexual intercourse with her when she was 13 years old. _Id._, Exh. N.   Petitioner was arrested at the hospital and admitted to law enforcement that it was possible he was the father of V.O.'s child.   _Id._, Exh. N.

On April 21, 2006, a Maricopa County grand jury indicted Petitioner on two counts of sexual conduct with a minor, class 2 felonies and dangerous crimes against children. _Id._, Exh. A.   On October 4, 2006, pursuant to a written plea agreement, Petitioner pled guilty to one count of sexual conduct with a minor under the age of 15, a class 2 felony and dangerous crime against children in the first degree (Count 1 one of the indictment), and one amended count of attempted sexual conduct with a minor, a class 3 felony and dangerous crime against children (Count 2 of the indictment). _Id._, Exhs. G, H, I.   The plea agreement specified Petitioner would receive a sentence of between 13 and 27 years imprisonment. _Id._, Exh. I.   The plea agreement also required Petitioner to submit DNA and register as a sex offender.   _Id._, Exh. I.

On January 12, 2007, the state trial court sentenced Petitioner to a term of 20 years imprisonment pursuant to his conviction on one count of sexual conduct with a minor under the age of 15, with credit for 280 days of presentence incarceration, and to a term of lifetime probation pursuant to his conviction on one count of attempted sexual conduct with a minor. _Id._, Exh. O & Exh. P.

1    The plea agreement waived Petitioner's right to a
2 direct appeal of his convictions and sentences. <u>Id.</u>, Exh. I.
3 On March 28, 2007, Petitioner initiated an action pursuant to
4 Rule 32, Arizona Rules of Civil Procedure. <u>Id.</u>, Exh. Q.
5 Petitioner was appointed counsel, who notified the state court
6 that they could find no colorable claims for post-conviction
7 relief. <u>Id.</u>, Exh. R. Petitioner filed a pro per Rule 32
8 petition in which he asserted that: (1) his guilty plea was not
9 knowingly, voluntarily, or intelligently made; (2) the
10 prosecutor committed misconduct and violated the state's "Brady"
11 obligations to disclose the results of a DNA paternity test; (3)
12 his attorney rendered ineffective assistance of counsel; (4) he
13 did not make any incriminating statements to police; (5) he was
14 denied his Miranda rights; (6) his "counsel was acting as a
15 second prosecutor;" and (7) newly-discovered material facts
16 existed that would change the outcome of his case. <u>Id.</u>, Exh. T.
17    On September 2, 2008, the trial court summarily
18 dismissed Petitioner's Rule 32 action, finding that he had
19 failed to present any colorable claims for relief. <u>Id.</u>, Exh. W.
20 The trial court determined that, after being read his Miranda
21 rights, Petitioner had admitted he could be the father of his
22 daughter's baby. The trial court noted that the state had been
23 awaiting the birth of V.O.'s baby to conduct DNA testing to
24 establish paternity when Petitioner decided to plead guilty and,
25 accordingly, the state did not continue with the DNA testing to
26 confirm the baby's paternity. The trial court concluded the
27 state's failure to complete DNA paternity testing after

28                              -3-

Petitioner's decision to plead guilty did not give rise to a colorable claim of prosecutorial misconduct or ineffective assistance of counsel.

The state court also determined Petitioner had knowingly, intelligently, and voluntarily entered his guilty plea. Additionally, the court found Petitioner had failed to demonstrate that his attorney's performance was deficient or that he was prejudiced by any alleged deficiencies. The trial court further concluded Petitioner had waived his Miranda and Brady claims when he entered his guilty plea. The state court also determined that Petitioner's proffered "newly discovered evidence", i.e., an affidavit from his wife stating her belief that the crimes did not occur, did not warrant relief. Id., Exh. W.

On October 1, 2008, Petitioner sought review of the trial court's decision denying Rule 32 relief by the Arizona Court of Appeals, which summarily denied review on January 19, 2011. Id., Exh. X & Exh. Y. Petitioner did not seek review of this decision by the Arizona Supreme Court.

On January 20, 2012, Petitioner filed his action for federal habeas relief, asserting three grounds for relief. Petitioner contends he was denied his right to the effective assistance of counsel during his plea proceedings. Petitioner also contends he was denied his right to due process of law because the prosecutor failed to disclose evidence favorable to Petitioner. Petitioner also asserts he is actually innocent of the crimes for which he was convicted.

-4-

1    Respondents allow that the petition is timely filed and
2   that Petitioner properly exhausted his federal habeas claims in
3   the state courts.   Respondents argue that Petitioner's claims
4   must be denied and his petition dismissed because the state
5   courts' decisions denying the claims were not contrary to nor an
6   unreasonable application of federal law.

7          **II Standard of review regarding exhausted claims**

8          The Court may not grant a writ of habeas corpus to a
9   state prisoner on a claim adjudicated on the merits in state
10  court proceedings unless the state court reached a decision
11  contrary to clearly established federal law, or the state court
12  decision was an unreasonable application of clearly established
13  federal law.   See 28 U.S.C. § 2254(d); Carey v. Musladin, 549
14  U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque,
15  555 F.3d 834, 838 (9th Cir. 2009).

16         A state court decision is contrary to federal law if it
17  applied a rule contradicting the governing law of Supreme Court
18  opinions, or if it confronts a set of facts that is materially
19  indistinguishable from a decision of the Supreme Court but
20  reaches a different result.   See, e.g., Brown v. Payton, 544
21  U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v.
22  Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004);
23  Taylor v. Lewis, 460 F.3d 1093, 1097 n.4 (9th Cir. 2006). A
24  state court decision involves an unreasonable application of
25  clearly established federal law if it correctly identifies a
26  governing rule but applies it to a new set of facts in a way
27  that is objectively unreasonable, or if it extends, or fails to

28                                  -5-

extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. <u>McNeal v. Adams</u>, 623 F.3d 1283, 1287-88 (9th Cir. 2010), <u>cert.</u> <u>denied</u>, 131 S. Ct. 3066 (2011).

For example, a state court's decision is considered contrary to federal law if the state court erroneously applied the wrong standard of review or an incorrect test to a claim. See <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 129 S. Ct. 1411, 1419 (2009); <u>Wright v. Van Patten</u>, 552 U.S. 120, 124-25, 128 S. Ct. 743, 746-47 (2008); <u>Norris v. Morgan</u>, 622 F.3d 1276, 1288 (9th Cir. 2010), <u>cert.</u> <u>denied</u>, 131 S. Ct. 1557 (2011). <u>See also</u> <u>Frantz v. Hazey</u>, 533 F.3d 724, 737 (9th Cir. 2008); <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1233 (10th Cir. 2009).

The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." <u>Ramdass v. Angelone</u>, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000). <u>See also</u> <u>Cheney v. Washington</u>, 614 F.3d 987, 994 (9th Cir. 2010); <u>Cook v. Schriro</u>, 538 F.3d 1000, 1015 (9th Cir. 2008). However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable. <u>See</u>, <u>e.g.</u>, <u>Renico v. Lett</u>, 130 S. Ct. 1855, 1862 (2010). An unreasonable application of law is different from an incorrect one. <u>See id.</u>; <u>Cooks v. Newland</u>, 395 F.3d 1077, 1080 (9th Cir. 2005). "That

-6-

1   test is an objective one and does not permit a court to grant

2   relief simply because the state court might have incorrectly

3   applied federal law to the facts of a certain case." <u>Adamson v.</u>

4   <u>Cathel</u>, 633 F.3d 248, 255-56 (3d Cir. 2011).

5           A state court's determination that a claim
6       lacks merit precludes federal habeas relief
        so long as "fairminded jurists could
7       disagree" on the correctness of the state
        court's decision. <u>Yarborough v. Alvarado</u>, 541
8       U.S. 652, 664, 124 S. Ct. 2140,[ ] (2004).
        And as this Court has explained,
9       "[E]valuating whether a rule application was
        unreasonable requires considering the rule's
10      specificity. The more general the rule, the
        more leeway courts have in reaching outcomes
11      in case-by-case determinations." <u>Ibid.</u> "[I]t
        is not an unreasonable application of clearly
12      established Federal law for a state court to
        decline to apply a specific legal rule that
13      has not been squarely established by this
        Court." <u>Knowles v. Mirzayance</u>, 556 U.S. 111,
14      129 S.Ct. 1411, 1413-14, [ ] (2009) (internal
        quotation marks omitted).

15

16   <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011).

17          The phrase "clearly established Federal law"
        refers to "the holdings, as opposed to the
18      dicta," of the Supreme Court's decisions "as
        of the time of the relevant state-court
19      decision." <u>Williams v. Taylor</u>, 529 U.S. 362,
        412, 120 S. Ct. 1495 [ ] (2000). A state
20      court's decision is "contrary to" this body
        of law if it applies a rule that contradicts
21      the governing law articulated by the Supreme
        Court or arrives at a result different than
22      that reached by the Supreme Court in a case
        with materially indistinguishable facts. <u>Id.</u>
23      at 405-06, 529 U.S. 362, 120 S. Ct. 1495, [].
            A decision involves an "unreasonable
24      application" of clearly established federal
        law if it "identifies the correct governing
25      legal principle ... but unreasonably applies
        that principle to the facts of the prisoner's
26      case." <u>Id.</u> at 413, 529 U.S. 362, 120 S. Ct.
        1495 []. The Supreme Court has emphasized
27      that "an unreasonable application of federal

28                              -7-

> law is different from an incorrect application of federal law." Id. at 410, 529 U.S. 362, 120 S. Ct. 1495, []. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411, 529 U.S. 362, 120 S. Ct. 1495.Instead, the court must determine whether the state court's application of Supreme Court precedents was objectively unreasonable. Id. at 409, 529 U.S. 362, 120 S. Ct. 1495, []. Although the Supreme Court's decisions are the focus of the unreasonable-application inquiry, we may look to Ninth Circuit case law as "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 2000).

Howard v. Clark, 608 F.3d 563, 567-68 (9th Cir. 2010).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240-41, 125 S.Ct. 2317, 2325(2005); Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson v. Lambert, 504 F.3d 873, 881 (9th Cir. 2007); Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304-05 (1982). Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits

-8-

in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1398 (2011).

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires. <u>See</u> <u>Panetti v. Quarterman</u>, 551 U.S. 930, 953-54, 127 S. Ct. 2842, 2858-59 (2007); <u>Greenway v. Schriro</u>, 653 F.3d 790, 805-06 (9th Cir. 2011); <u>Norris</u>, 622 F.3d at 1286; <u>Howard</u>, 608 F.3d at 568.

**III Analysis of Petitioner's claims for relief**

**A. Petitioner contends he was denied his right to the effective assistance of counsel during his plea proceedings.**

Petitioner asserts he was denied his right to the effective assistance of counsel during plea negotiations because: (1) counsel allegedly told Petitioner that he had to sign the plea agreement; (2) counsel did not request the results of a DNA paternity test and Petitioner would not have pled guilty had he known the results of the test; (3) counsel did not provide Petitioner with a written confession or electronically recorded admission to determine if Petitioner's Miranda rights had been violated; and (4) Petitioner's wife alleged counsel

told her that he "wasn't there to help [Petitioner], but that he was there to put [Petitioner] in prison," and counsel was thus working as a "second prosecutor." Answer, Exh. Z (Petition) at 6.

Petitioner asserted in his state Rule 32 action that he was denied his right to the effective assistance of counsel. The state court concluded Petitioner had not presented a colorable claim for relief. This decision was not clearly contrary to federal law nor an unreasonable application of federal law.

To state a claim for ineffective assistance of counsel, a habeas petitioner must show both that his attorney's performance was deficient and that the deficiency prejudiced the his defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). The petitioner must overcome the strong presumption that counsel's conduct was within the range of reasonable professional assistance required of attorneys in that circumstance. See id., 466 U.S. at 687, 104 S. Ct. at 2064. To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. See also, e.g., Harrington, 131 S. Ct. at 786-88. Counsel's performance will be held constitutionally deficient only if the habeas petitioner proves counsel's actions "fell below an objective standard of reasonableness," as measured by "prevailing professional norms." Strickland, 466 U.S. at 688,

104 S. Ct. 2052. <u>See</u> <u>also</u> <u>Cheney v. Washington</u>, 614 F.3d 987, 994-95 (9th Cir. 2010). To succeed on a claim that his counsel was constitutionally ineffective regarding a guilty plea, a petitioner must show that his counsel's advice as to the consequences of the plea was not within the range of competence demanded of criminal attorneys. <u>See</u>, <u>e.g.</u>, <u>Hill v. Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 369 (1985).

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness. A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range' of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

<u>Premo v. Moore</u>, 131 S. Ct. 733, 739 (2011) (internal citations and quotations omitted), <u>citing</u> <u>Harrington</u>, 131 S. Ct. at 788.

To establish prejudice, the petitioner must establish that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694, 104 S. Ct. at 2068. <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Cheney</u>, 614 F.3d at 994. Therefore, to succeed on an assertion his counsel's performance was deficient because counsel failed to raise a particular argument, the petitioner must establish the argument was likely to be successful, thereby establishing that he was prejudiced by his counsel's omission. <u>See</u> <u>Tanner v. McDaniel</u>, 493 F.3d 1135, 1144 (9th Cir. 2007); <u>Weaver v. Palmateer</u>, 455 F.3d 958, 970 (9th

Cir. 2006).  "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Counsel's performance is not deficient nor prejudicial when counsel "fails" to raise an argument that counsel reasonably believes would be futile.  See Premo, 131 S. Ct. at 741; Harrington, 131 S. Ct. at 788.  Accordingly, prejudice from counsel's allegedly deficient performance is less likely when the case against the defendant is strong.  See, e.g., Wong v. Belmontes, 558 U.S. 15, 130 S. Ct. 383, 390-91 (2009); Avila v. Galaza, 297 F.3d 911, 923-24 (9th Cir. 2002); Godwin v. Johnson, 632 F.3d 301, 311 (6th Cir. 2011).

It is Petitioner's burden to establish both that his counsel's performance was deficient and that he was prejudiced thereby.  See, e.g., Wong, 130 S. Ct. at 384-85.  "Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010), quoted in Harrington, 131 S. Ct. at 788.

Petitioner alleges his counsel told Petitioner that he had to sign the plea agreement.  However, the state court found that Petitioner had entered the plea agreement knowingly and voluntarily.  Petitioner also asserts counsel did not request the results of a DNA paternity test and Petitioner would not have pled guilty had he known the results of the test.  As a matter of fact, no paternity test was conducted because Petitioner decided to plead guilty.  Petitioner also asserts counsel did not provide Petitioner with a written confession or

-12-

electronically recorded admission to determine if Petitioner's Miranda rights had been violated. Counsel is not ineffective for failing to raise an argument that Petitioner's Miranda rights were violated when counsel could conclude that this argument would not prevail. Petitioner further alleges, without supporting evidence, that Petitioner's wife alleged counsel told her that he "wasn't there to help [Petitioner], but that he was there to put [Petitioner] in prison," and counsel was thus working as a "second prosecutor." The state trial court did not err in concluding, after reviewing the record before it, that this assertion standing alone indicated counsel's performance was deficient.

Petitioner has not established that his counsel's performance was deficient or that, absent his counsel's deficient performance, he would not have pled guilty but instead would have proceeded to trial on the charges against him. Petitioner faced a substantially longer sentence had he proceeded to trial and been found guilty. The state court's determination that Petitioner was not denied his right to the effective assistance of counsel in his plea proceedings was not clearly contrary to nor an unreasonable application of federal law. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

**B. Petitioner asserts he was denied his right to due process of law because the prosecutor failed to disclose evidence favorable to Petitioner.**

Petitioner argues that the state failed to disclose evidence that was favorable to his defense, thus violating his right to due process rights in violation of the doctrine of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S. Ct. 1194 (1963). Specifically, Petitioner contends that the prosecutor failed to conduct a DNA paternity test with regard to V.O.'s baby, the results of which he alleges would have exculpated him of the charged offenses, i.e., sexual abuse of V.O..

Respondents aver:

> Following the indictment, the State successfully moved to take DNA samples from Petitioner so that a comparative analysis could be conducted upon the birth of V.O.'s child. (Exhibits B & C.) That analysis, however, was halted when Petitioner pled guilty before the baby was born. (Exhibit K, at 9.) Petitioner then moved to withdraw from the plea and change counsel. (Exhibit J.) At the hearing on his motion, the State noted that if the court allowed Petitioner to withdraw from his plea, it would complete the DNA paternity test. (Exhibit K, at 9.) Despite the State's avowal, however, Petitioner chose to withdraw his motion and move forward with the existing plea agreement. (Id. at 10.)

The state court considered Petitioner's <u>Brady</u> claim in the context of his Rule 32 action and concluded Petitioner had not been denied his right to due process of law. The state court did not err in concluding that Petitioner's right to due process of law was not violated because the state did not conduct a DNA test with regard to the paternity of V.O.'s baby.

-14-

In <u>Brady v. Maryland</u> the United States Supreme Court held that a defendant's right to due process of law is violated when the government fails to disclose evidence that is material to the defendant's guilt or innocence, including impeachment evidence. <u>See</u> 373 U.S. at 86-87, 83 S. Ct. at 1196-97; <u>Schad v. Ryan</u>, 595 F.3d 907, 915 (9th Cir. 2010). The state violates this obligation and denies a criminal defendant due process of law if "(1) the evidence in question was favorable to the defendant, meaning that it had either exculpatory or impeachment value; (2) the state 'willfully or inadvertently' suppressed the evidence; and (3) the defendant was prejudiced by the suppression." <u>Schad</u>, 595 F.3d at 915, <u>quoting</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 1948 (1999). <u>See also</u> <u>Horton v. Mayle</u>, 408 F.3d 570, 578 (9th Cir. 2005).

Petitioner contends that the state had a duty to perform the DNA test which he asserts could have been exculpatory. However, the Supreme Court has held that the state does not have "an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution," <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58, 109 S. Ct. 333, 337 (1988), and that "the police do not have a constitutional duty to perform any particular tests." <u>Id.</u>, 488 U.S. at 59, 109 S. Ct. 338. "Moreover, in <u>Youngblood</u>, the Supreme Court modified the <u>Trombetta</u> test by imposing the additional requirement that the defendant demonstrate that the police acted in bad faith in failing to preserve the potentially useful evidence." <u>United</u>

States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997). "The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation." Paradis v. Arave, 954 F.2d 1483, 1488 (9th Cir. 1992), vacated on other grounds, 113 S. Ct. 1837 (1993).

Petitioner has not established that a DNA test would have been exculpatory nor has Petitioner established that the state acted in bad faith regarding the "failure" to conduct the paternity test. Accordingly, the state court's decision was not clearly contrary to nor an unreasonable application of federal law and Petitioner is not entitled to relief on this claim.

**C. Petitioner maintains he is actually innocent of the crimes for which he was convicted.**

The United States Supreme Court has not held that a "freestanding" claim of factual innocence, i.e., one unaccompanied by a substantive claim of constitutional error in trial proceedings, provides a basis for federal habeas relief in a non-capital case. See also District Attorney's Office v. Osborne, 557 U.S. 52, 71-74, 129 S. Ct. 2308, 2321-23(2009).[1]

---

[1] As a fallback, Osborne also obliquely relies on an asserted federal constitutional right to be released upon proof of "actual innocence." Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.

-16-

The Supreme Court has not decided whether a persuasive demonstration of actual innocence after trial would render unconstitutional a conviction and sentence that is otherwise free of constitutional error. See House v. Bell, 547 U.S. 518, 554-55, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006). The Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." Herrera v. Collins, 506 U.S. 390, 417, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. House, 547 U.S. at 555, 126 S.Ct. 2064; see Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Thus, on a freestanding claim of actual innocence, it is not sufficient that a petitioner shows even that it is "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327, 115 S.Ct. 851. The "extraordinarily high" threshold, if recognized, would be even higher. House, 547 U.S. at 555, 126 S.Ct. 2064.

Dansby v. Norris, 682 F.3d 711, 716 (8th Cir. 2012).

In this matter, to establish his innocence, Petitioner relies on an affidavit from his wife in which she states she believes Petitioner is innocent. Because post-trial affidavits are "obtained without the benefit of cross-examination," they "are to be treated with a fair degree of skepticism..." Herrera v. Collins, 506 U.S. 390, 417, 113 S. Ct. 853, 872 (1993).

Petitioner has not stated a claim for federal habeas relief by asserting that he is "actually innocent" of a crime to which he pled guilty. Additionally, assuming a claim of actual innocence is a basis for relief, Petitioner has not made the extraordinarily high evidentiary standard for asserting such a

claim.

## IV Conclusion

The Arizona state courts' decision denying relief on the claims raised in the federal habeas petition was not clearly contrary to nor an unreasonable application of federal law. Additionally, Petitioner's claim that he is "actually innocent" of the crimes of conviction is not cognizable in a habeas action regarding a non-capital case.

**IT IS THEREFORE RECOMMENDED that** Mr. Sanchez' Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.  See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right as required by 28 U.S.C.A § 2253(c)(2).

DATED this 24th day of October, 2012.

_____
Mark E. Aspey
United States Magistrate Judge

-19-